**LINDEMANN LAW FIRM, APC**
BLAKE J. LINDEMANN, SBN 255747
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone:  (310)-279-5269
Facsimile:  (310)-300-0267
E-mail:       blake@lawbl.com

-and-

DAREN M. SCHLECTER, SBN 259537
**LAW OFFICE OF DAREN M. SCHLECTER, APC**
1925 Century Park East, Suite 830
Los Angeles, CA 90067
Telephone:   (310)-553-5747

Attorneys For Plaintiffs
Jinhua Zou, Yu Xia Lu, Chuanjie Yang, Ollie
Lan, Liu Liu, And All Those Similarly Situated

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

JINHUA ZOU, an individual; YU XIA LU, an individual; CHUANJIE YANG, an individual; OLLIE LAN aka RUONING LAN, an individual; LIU LIU, an individual, and all those similarly situated,

Plaintiffs,

v.

MARKET AMERICA, INC., a North Carolina Corporation; MARKET AMERICA WORLDWIDE, INC., a North Carolina Corporation; SHOP MA, INC., a Florida Corporation; JAMES HOWARD RIDINGER, an individual; LOREN RIDINGER, an individual; MARC ASHLEY, an individual; MARTY WEISSMAN, an individual; DENNIS FRANKS, an individual; JOE BOLYARD, an individual; ANTHONY AKERS, an individual;  EDDY ALBERTY, an individual; STEVE ASHLEY, an individual; MICHAEL BRADY, an individual; KEVIN BUCKMAN, an individual; PETER

Case No.

**ORIGINAL COMPLAINT – CLASS ACTION**

**[DEMAND FOR JURY TRIAL]**

1  GOLD, an individual; VINCE HUNT, an
   individual;  CHRIS PEDDYCORD, an individual;
2  BRANDI QINN, an individual; SAM RITCHIE,
   an individual; EUGENE WALLACE, an
3  individual; JIM WINKLER, an individual;
   ELIZABETH WEBER, an individual; JOANNE
4  HSI, an individual; BENJAMIN GINDER, JR., an
   individual; DOLLY KUO, an individual; MING-
5  CHU KUO, an individual; FRANK J. KEEFER,
   an individual; JUNE YU SHAN, an individual;
6  ACE LEE, an individual; STEPHANIE LEE, an
7  individual; MIN LIU, an individual; PATRICK
   HSIEH, an individual; ALICE HSIEH, an
8  individual; VICTOR J. CHIOU, an individual;
   ALICE CHIOU, an individual; BILL WU, an
9  individual; MAGGIE HO, an individual; SIMON
10 LIU, an individual; WANG CHANG, an
   individual; VINCENT CHANG, an individual;
11 LUCY HONG LIU, an individual; SARAH
   LOLO, an individual; XIAOYING CHEN JI, an
12 individual; KITTY CHAO, an individual;
   ROGER WU, an individual; KARRI WU, an
13 individual; YANG ZHAO, an individual; and
   DOES 1-100;
14

15                   Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

## I. **INTRODUCTION TO THE CASE**

1. Market America, Inc. ("MarketAmerica") and their cohorts represented to plaintiffs Jinhua Zou, Yu Xia Lu, Chuanjie Yang, Ollie Lan, and Liu Liu (collectively, the "Plaintiffs") that Market America provides a business opportunity "unlike any seen in history before" and that Plaintiffs could formulate their growth for future financial success through MarketAmerica. Plaintiffs and hundreds of thousands, have joined MarketAmerica and have become distributors.

2. MarketAmerica touts that by following a "two-year blueprint," any person can formulate, grow, and shape his or her growth for financial success. According to MarketAmerica, the only way to fail under MarketAmerica's business model is to quit. Meanwhile, MarketAmerica and its confederate conspirators now assert a business valuation of over $7.3 billion that they have made off the backs of millions of people in their pyramid.

3. MarketAmerica targets Chinese-American immigrants who do not have regularly available legal channels to vindicate their legal rights, and in hope of selling "wonder" products to their relatives in China.

4. This sort of targeted scam has also been characterized as "affinity fraud"—a recurring form of fraud that preys upon members of identifiable groups, such as religious or ethnic communities. The scams exploit the trust and friendship that exist in groups of people who have something in common.

5. Plaintiffs did <u>not</u> make money as promised. As with the case of hundreds of thousands of MarketAmerica distributors before and after them, the Plaintiffs failed. Plaintiffs and those similarly situated, failed even though they were committed and put in the time and effort. They failed because they were doomed from the start by a MarketAmerica marketing plan that systematically rewards recruiting Distributors over the sale of products.

6. Over 90% of MarketAmerica Distributors average net <u>losses</u>. No persons, except Individual Defendants and secretly placed individuals into the "representative" tiers of the company, makes <u>any</u> money.

7. Defendants run an illegal pyramid scheme. Defendants take money in return for the right to sell products that they do not even manufacture, and reward for recruiting other

1   participants into the pyramid.   Defendants use the allure and sourcing of name brand products to

2   prop up the pyramid scheme.

3       8.      Defendants operate under a multilevel marketing business model. In a legitimate

4   MLM, distributors earn money primarily through direct sales of products to customers.

5   Secondarily, distributors also have an incentive to recruit new distributors, as they are promised a

6   percentage of their recruits' sales. Such recruits are known as a distributor's "downline," and the

7   distributor is known as a recruit's "upline."

8       9.      An illegal "pyramid scheme," like that perpetrated by Defendants, takes advantage

9   of the public by pretending to engage in legitimate multilevel marketing while actually siphoning

10  off money from new recruits to pay the people at the top level. The Federal Trade Commission

11  explains that, with a pyramid scheme, "the money you make is based primarily on the number of

12  distributors you recruit and your sales to them, rather than on your sales to people outside the plan

13  who intend to use the products."

14      10.     Similar to a chain letter, a pyramid scheme disappoints those at the bottom who can

15  find no recruits. Because it must eventually collapse, a pyramid scheme is inherently fraudulent.

16      11.     The FTC notes that "[i]f the money you make is based on your sales to the public,

17  it may be a legitimate multilevel marketing plan. If the money you make is based on the number of

18  people you recruit and your sales to them, it's not. It's a pyramid scheme. Pyramid schemes are

19  illegal, and the vast majority of participants lose money."

20      12.     Dr. Peter J. Vander Nat, a Senior FTC Economist and an expert witness for the

21  agency in pyramid cases, defined a pyramid scheme as follows: If an organization sells goods or

22  services to the public and the participants in the organization obtain monetary benefits from (1)

23  recruiting new members and (2) selling the organization's goods and services to consumers, the

24  organization is deemed a pyramid scheme if the participants obtain their monetary benefits

25  primarily from recruitment rather than the sale of goods and services to consumers.

26      13.     That some retail sales may occur does not mitigate the unlawful nature of a

27  pyramid scheme.

28

14. Another indication of a pyramid scheme, according to the FTC, is that "[t]he recruitment pitch says you'll be living in the lap of luxury. It fails to tell you most people in a pyramid scheme lose money."

15. Further, the products offered as part of a pyramid scheme typically "are overpriced, have questionable merits, or are downright unsafe to use."

16. The FTC asks three questions to determine whether an MLM is an unlawful pyramid scheme:

• Do distributors sell more product to other distributors than they do to the legitimate retail consumers?

• Does the amount of money distributors make depend more on recruiting (that is, getting new distributors to pay for the right to participate in the plan)?

• Does the money made depend mostly on selling to other distributors than on sales of the product to the public?

17. With regard to the business model at issue in this case, the answer to each of these questions is "yes."

18. Accordingly, Plaintiffs, for themselves, all others similarly situated, and the general public, allege:

II. **TYPE OF ACTION**

19. Plaintiffs sue for themselves and for all persons who were MarketAmerica "participants" as defined in the applicable statute, from 2010 until the present under California's Endless Chain Scheme Law (California's Penal Code § 327 and California Civil Code § 1689.2), California's Unfair Competition Law (Business and Professions Code §17200 et seq.), False Advertising Law (Business and Professions Code §17500), Seller's Adjusted Marketing Practices ACT (SAMP Act), and Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. against all defendants for the operation and promotion of an inherently fraudulent endless chain scheme.

20. Plaintiffs Yang, Lan, and Liu have already brought a class action in the Central District of California, Case No. 2:17-cv-04012-GW-JEM (Hon. George Wu) against some of the

1    Defendants in this action. Plaintiffs Zou and Lu did not participate in the Central District Action.

2    The Central District Action has been stayed, unstayed, and then stayed, and there have been

3    questions as to the propriety of Jurisdiction of the dispute in the Central District of California

4    because the Defendants have operations and physical offices only in the Northern District of

5    California and North Carolina. Judge Wu referred a determination as to whether the disputes

6    between Plaintiffs Yang, Lan, and Liu were arbitrable, to the District of North Carolina, Case No.

7    1:17-cv-00897-JEP, and has not ruled on whether provisional relief may be sought in the Central

8    District. Judge Peake has suggested that the North Carolina District Court may further refer the

9    question of arbitrability as for Yang, Lan and Liu only, to AAA, though Judge Peake has not made

10   a determination on pre-arbitral provisional relief, and where that particular relief should proceed.

11   Plaintiffs Yang, Lan and Liu only seek provisional relief at this time through this Complaint, but

12   reserve the right to amend.

13   III.   **PARTIES**

14        21.     Plaintiff Jinhua Zou ("Zou"), is and at all relevant times, has resided in California.

15        22.     Plaintiff Yu Xia Lu ("Lu"), is and at all relevant times, has resided in California.

16        23.     Plaintiff Chuanjie Yang ("Yang"), is and at all relevant times, has resided in the

17   County of Los Angeles.

18        24.     Plaintiff Ollie Lan, aka Ruoning Lan ("Lan"), is and at all relevant times, has

19   resided in the County of Los Angeles.

20        25.     Plaintiff Liu Liu ("Liu") is and at all relevant times, has resided in the County of

21   Los Angeles.

22        26.     Market America, Inc. is a North Carolina Corporation ("MarketAmerica") that

23   operates and manages the pyramid scheme in California, and its principle place of business is in

24   Monterey, California.

25        27.     MarketAmerica targets its unfranchise business to all major cities, including San

26   Francisco and Los Angeles, through which numerous persons identify themselves as independent

27   "unfranchise owners," who reside in San Francisco and Los Angeles. Several mouse meeting and

28

recruiting sessions take place in San Francisco, and the events giving rise to this dispute occur throughout all major counties of California, including San Francisco County.

28.    Market America Worldwide, Inc. is a North Carolina Corporation ("Marketing") that also operates and manages the pyramid scheme in California and its place of business is in Monterey, California.

29.    Defendant Shop MA, Inc. ("Shop") is a Corporation, registered in Florida, that operates and does business in California, and is based out of Monterey and has its principal place of business in Moneterey, California.

30.    Defendant James Howard Ridinger aka JR Ridinger ("JR") is a natural person.  JR is the founder of MarketAmerica and Marketing, Chairman, and CEO.  He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

31.    Defendant Loren Ridinger ("Loren") has been characterized as the senior executive Vice President for MarketAmerica.  She is not being sued in that capacity, but rather because she is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

32.    Defendant Marc Ashley ("Ashley") is the brother of Loren and has been characterized as the President and Chief Operating Office of MarketAmerica.   He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

33.    Defendant Marty Weissman ("Weissman") has been characterized as the Executive Vice President of MarketAmerica.   He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

34.    Defendant Dennis Franks ("Franks") asserts the title of Executive Vice President of MarketAmerica.   He is not being sued in that capacity, but rather because he is a conspirator, at or

near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

35.     Defendant Joe Bolyard ("Bolyard") asserts the title of Executive Vice President of International Development of MarketAmerica.   He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

36.     Anthony Akers ("Akers") asserts a title of Vice President of Market America and Shop.com.  He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

37.     Eddy Alberty ("Alberty") asserts a title of VP of Strategic Partnerships of Market America and Shop.com.  He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

38.     Steve Ashley ("S. Ashley") asserts the title of President of Shop.com.  He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

39.     Michael Brady ("Brady") asserts the title of Chief Information Office.   He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

40.     Kevin Buckman ("Buckman") asserts the title of Special Projects Consultant.   He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

41. Peter Gold ("Gold") asserts the title of Chief Digital Marketing Officer. He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

42. Vince Hunt ("Hunt") asserts the title of Special Advisor to Shop.Com. He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

43. Chris Peddycord ("Peddycord") asserts the title of VP of Business Integration to Shop.Com. He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

44. Brandi Qinn ("Qinn") asserts the title of VP of Operations to Shop.Com. She is not being sued in that capacity, but rather because she is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

45. Sam Ritchie ("Ritchie") asserts the title of VP of Research and Development to Shop.Com. He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

46. Eugene Wallace ("Wallace") asserts the title of Chief Technology Officer to Shop.Com. He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

47. Jim Winkler ("Winkler") asserts the title of VP of Sales to Shop.Com. He is not being sued in that capacity, but rather because he is a conspirator, at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

48.     Defendant Elizabeth Weber ("Weber") is near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

49.     Defendant Joanne Hsi ("Hsi") is near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

50.     Benjamin Ginder, Jr. ("Ginder") is near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

51.     Dolly Kuo ("Kuo") is at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

52.     Ming-Chu Kuo ("M. Kuo") is at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

53.     Frank J. Keefer ("Keefer") is at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

54.     June Yu Shan ("Shan") is at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

55.     Ace Lee ("A. Lee") is at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

56.     Stephanie Lee ("S. Lee") is at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

57. Min Liu ("M. Liu") is at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

58. Patrick Hsieh ("P. Hsieh") is at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

59. Alice Hsieh ("A. Hsieh") is at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

60. Victor J. Chiou ("V. Chiou") is at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

61. Alice Chiou ("A. Chiou") is at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

62. Bill Wu ("Wu") is at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

63. Maggie Ho ("Ho") is at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

64. Simon Liu ("S. Liu") is at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

65. Wang Chang ("W. Chang") is at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme, who preaches among other things that "one can retire their

parents" and so "they can move to United States through Market America," and that the Market America opportunity is meant to replace a job.

66.     Vincent Chang ("V. Chang") is at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme, who preaches among other things that "one can retire their parents" and so "they can move to United States through Market America," and that the Market America opportunity is meant to replace a job.

67.     Lucy Hong Liu ("LH Liu") is at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

68.      Sarah Lolo ("Lolo") is at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

69.     Xiaoying Chen Ji ("Ji") is at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

70.     Kitty Chao ("K. Chao") is at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

71.     Roger Wu ("R. Wu") is at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

72.     Karri Wu ("K. Wu") is at or near the top of the pyramid operated and promoted by the Defendants, and she actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

73.     Yang Zhao ("Y. Zhao") is at or near the top of the pyramid operated and promoted by the Defendants, and he actively participates in, promotes, and profits from MarketAmerica's pyramid scheme.

74. JR, Loren, Ashley, Weissman, Franks, Bolyard, Akers, Alberty, S. Ashley, Brady, Buckman, Gold, Hunt, Peddycord, Qinn, Ritchie, Wallace, Winkler, Weber, Hsi, Ginder, Kuo, M. Kuo, Keefer, Shan, A. Lee, S. Lee, M. Liu, P. Hsieh, A. Hsieh, V. Chiou, A. Chiou, Wu, Ho, S. Liu, W. Chang, V. Chang, LH Liu, Lolo, Ji, K. Chao, R. Wu, Y. Zhao, K. Wu, collectively, are referred to hereinafter, as the "Individual Defendants."

75. The Individual Defendants, MarketAmerica, Marketing, Shop, and DOES-100 are collectively referred to hereinafter as the "Defendants."

IV. **JURISDICTION AND VENUE**

76. Jurisdiction is conferred upon this Court because Defendants do business in this judicial district, they hold themselves out and market to this jurisdiction, and they actually conduct significant transactions in this jurisdiction and participate in this jurisdiction, and specifically in Monterey, California. Under Plaintiffs' California state law claims, more than 75% of those affected in the class (and perhaps more persons) are residents of the State of California. Supplemental jurisdiction, specific, general jurisdiction exists over the RICO causes of action, because personal jurisdiction exists over at least one of the defendants, and each of the Defendants participated in one RICO scheme.

77. Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here, a substantial part of the property that is the subject of this action is situated here, and Defendants are subject to personal jurisdiction, in this District.

78. Defendant MarketAmerica is subject to the jurisdiction of this Court. MarketAmerica has been engaged in continuous and systematic business in California and has purposely availed itself of this Court's jurisdiction. In fact, many of MarketAmerica's representative business activities originate from Monterey, California.

79. MarketAmerica has committed tortious acts in this State.

80. MarketAmerica, Shop, and Marketing interact with over 10,000 merchants as part of the pyramid scheme that are promoted to consumers, many of whom are in California.

81. Each of the Defendants named herein acted as a co-conspirator, single enterprise, joint venture, co-conspirator, or alter ego of, or for, the other Defendants with respect to the acts,

omissions, violations, representations, and common course of conduct alleged herein, and ratified said conduct, aided and abetted, or is other liable. Defendants have agreements with each other, and other unnamed Director co-conspirators and have reached agreements to market and promote the MarketAmerica pyramid as alleged herein.

82. Defendants were an integral part of the scheme that participated with MarketAmerica, and made decisions regarding: products, services, marketing strategy, compensation plans (both public and secret), incentives, contests and other matters. In addition, Defendants and unnamed co-conspirators were directly and actively involved in decisions to develop and amend the compensation plans.

83. Plaintiffs are presently unaware of the true identities and capacities of fictitiously named Defendants designated as DOES 1 through 100, but will amend this complaint or any subsequent pleading when their identities and capacities have been ascertained according to proof. On information and belief, each and every DOE defendant is in some manner responsible for the acts and conduct of the other Defendants herein, and each DOE was, and is, responsible for the injuries, damages, and harm incurred by Plaintiffs. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to all of the named defendants and those unknown parties sued under fictitious names.

84. Plaintiffs are informed and believe, and thereon allege that, at all times relevant hereto, all of the defendants together were members of a single association, with each member exercising control over the operations of the association. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to the above-referenced unincorporated association as a jural entity and each defendant herein is sued in its additional capacity as an active and participating member thereof. Based upon the allegations set forth in this Complaint, fairness requires the association of defendants to be recognized as a legal entity, as the association has violated Plaintiff and Class Members' legal rights.

85. Plaintiffs are further informed and believes and thereon alleges that each and all of the acts herein alleged as to each defendant was authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved said acts with full knowledge of the

consequences thereof, and memorialized the authority of the agent in a writing subscribed by the principal.

86.      Plaintiffs are informed and believe and thereon allege that each of the defendants herein agreed among each other to commit the unlawful acts (or acts by unlawful means) described in this Complaint.

87.      The desired effect of the conspiracy was to defraud and otherwise deprive Plaintiffs and Class Members (as hereinafter defined) of their constitutionally protected rights to property, and of their rights under other laws as set forth herein.  Each of the defendants herein committed an act in furtherance of the agreement.  Injury was caused to the Plaintiffs and Class Members by the defendants as a consequence.

V.      **FACTS**

     **A.      MarketAmerica Operates A Pyramid Scheme**

88.      MarketAmerica was founded in 1992 by a former Amway Distributor, and co-defendant, JR Ridinger.  MarketAmerica has very little costs, nor production requirements because it does not directly manufacture its own products.  Instead, MarketAmerica offers products from third party manufacturers, but requires distributors of MarketAmerica to pay monthly fees just for the opportunity to sell these third-party products, the touchstone of a pyramid scheme.

89.      To sign up as a Market America distributor, an enrollee must pay a start-up fee of $399.00 (which was even greater prior to 2013), and further, a distributor must commit to paying a monthly fee of $129.00, per month beginning upon enrollment.  Thus, at all times during the relevant class period, initial enrollment was greater than $500.   Further, an enrollee must spend between $130-$300 on products offered on Shop.com, per month to allegedly maintain qualifications as an enrollee.  MarketAmerica also requires distributors to attend trainings, events and seminars, which cost between $20 and $200.  The average victim of the Defendants loses several thousand dollars.

90.      MarketAmerica pays to an infinite level deep with the downline.  In other words, for every dollar earned by a distributor for start up-fees, all those lines above the person on the pyramid receive revenues from the person being enrolled.

91.     Rewards paid in the form of cash bonuses, where primarily earned for recruitment, as opposed to merchandise sales to consumers, constitute a fraudulent business model.  *See F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878 (9th Cir. 2014).

B.     **How MarketAmerica Perpetuates Its Pyramid Scheme**

92.     To "build a serious business, it is based on bringing two likeminded people-one on your right side, one on your left side."  *See* https://www.youtube.com/watch?v=TMSQnqK4l8A, (last visited May 27, 2017) (at 6:40).

93.     As each lower level is recruited, points and commissions are rewarded to an infinite level deep, i.e. to each level of the pyramid scheme.  According to MarketAmerica, "people lead to more people."  (*See* Figure No. 1).

[Complaint continued on next page]

FIGURE NO. 1





94.     Every dollar made by MarketAmerica (*i.e.* throughout the entire pyramid) accrues to the benefit of those at the top of the pyramid.

95.     Two commission checks are to be paid – money from BV (Business volume) Products that MarketAmerica affixes its logo to) and IBV (Incentive Business Volume) (non-MarketAmerica Products).

ORIGINAL COMPLAINT – CLASS ACTION

96.     After a distributor cycles (creates one full cycle of sales above as reflected in Figure No. 1), a distributor can "re-enter" the pyramid as a downline in both pyramids. Recyling is depicted in the black squares below as follows:

FIGURE NO. 2



97.     The purpose of "re-entry" is a feeble attempt to detract from the appearance of a perpetual pyramid scheme and to squeeze out those in the lower levels of the pyramid from bonuses, points, and commissions. Re-entries in MarketAmerica are represented by those in MarketAmerica to be "unlimited."

98.     Finally, if one becomes a "Master Unfranchise Owner" he or she can earn even more money (*see* Figure No. 3 below). In short, enrollees are asked to pay a large upfront fee for the speculative chance to earn another source of income. Those on the top of the pyramid will give up some of the ill-gotten profits *if* a Distributor signs up three times. According to MarketAmerica, through this process, a distributor can earn "$561,600." Through MarketAmerica, a distributor can have at most, four front lines. In actuality, no true MarketAmerica distributor earns $561,000, only those at the helm of the scheme, and more than 90% all enrollees earn nothing.

FIGURE NO. 3



99.     MarketAmerica claims to its victims, "don't overthink it. This is a proven system." According to representations and advertisements, MarketAmerica has taken "all the risk away."

FIGURE NO. 4



100.     MarketAmerica represents that this business opportunity can be "willed or transferable" to an distributor's children, you "get to dream big," and get to "make a difference in the world" by being a part of this business. The Defendants also represent that one can retire their parents through this opportunity.

C.      **Members Receive Benefits Only Through The Performance Of Those Downline To Them**

101.     As MarketAmerica's sale presentation states, income is made only from the recruit of additional sales representatives because Market America has to pay wholesale prices to those companies that actually manufacture its products.

102.     Some of the products offered by MarketAmerica are unhealthy and toxic, and after Plaintiff Lan's mother took MarketAmerica's products, she suffered health issues. MarketAmerica has been sued under Proposition 65 in a class action because certain of its products allegedly contained lead. *Environmental Research Center v. Market America, Inc.*, 30-2013-00650458 (Orange Ct. Sup. Ct, May 20, 2012).

D.      **Market America Encourages Inventory Loading**

103.     MarketAmerica encourages Distributors to recruit and to inventory load through its wholesale commissions.

104.     The prospect of wholesale commissions encourages recruiting: the more recruits a Distributor has, the more potential there is for a wholesale commission. The prospect of wholesale commissions also encourages Distributors to purchase product they do not otherwise need or want

1   to increase their points so that they can be eligible for greater discounts and thus, greater

2   wholesale commissions.

3       105.    There are very few retail purchases made at Distributors' sites.  These are

4   MarketAmerica webpages that allow retail customers to order directly from MarketAmerica and

5   attribute the purchase to a particular distributor (much like a customer informing the cashier at a

6   department store which clerk helped him find the sweater he is purchasing).  The customer does

7   not receive a discount for purchasing through a particular Distributor's Microsite, so the customer

8   has little incentive to order through the Microsite.  As for the Distributors, they will want to make

9   retail sales directly to retail customers so they can offload product that they have already

10   purchased from MarketAmerica.  In addition, for reasons described herein, few profitable retail

11   sales are made at all, via the sites or otherwise.  Thus, retail sales through a Distributor's site is not

12   a reliable source of points.

13       106.    The only reliable source of points for the majority of Distributors is their own

14   purchases.  Purchases for normal consumption will be insufficient to meet the thresholds required

15   to qualify for bigger discounts.  Thus, MarketAmerica's wholesale commissions financially

16   incentivize the Distributors to inventory load to make purchases; not for the purpose of fulfilling

17   retail demand, and not to satisfy their normal desire for nutritional supplements and health

18   products, but rather so that they can increase their points, qualify for greater discounts, and qualify

19   for wholesale commissions.  Moreover, as discussed above, every form of compensation paid by

20   MarketAmerica incentivizes recruiting - bringing more Distributors into the scheme. In fact,

21   Wholesale Commissions, Overrides, and Leadership Bonuses are payable only if a Distributor has

22   recruited new Distributors. Thus, just like a classic pyramid scheme, the MarketAmerica scheme

23   requires participants to put money into the scheme and rewards participants who bring in new

24   participants.

25       **E.**    **Distributors Are Unable To Sell MarketAmerica Products For A Profit**

26       107.    Distributors are unable to consistently sell MarketAmerica products for a profit for

27   many reasons. First, the products are overpriced.  Interchangeable products are available online or

28

in brick-and-mortar stores for amounts far less than MarketAmerica's suggested retail price, and even lower than its wholesale prices.

108.    Second, MarketAmerica's products themselves are available online for the wholesale price or less.  That these products are sold at or below the Advisor price makes it difficult for Distributors to sell the products for a profit. MarketAmerica may have taken action to reduce resales, but the fact remains that MarketAmerica products are available below the discount prices.  Moreover, many of these sales are likely made by current or former Distributors desperately trying to offload excess product at whatever price they can get, which further supports the propositions that Distributors Inventory Load and that the MarketAmerica products are overpriced.

109.    Third, MarketAmerica prohibits Distributors from selling the products in the only forum for a where Distributors could reasonably expect to sell enough product to make a meaningful profit: the internet. Some examples of these prohibited websites include, but are not limited to: eBay, Amazon or Craigslist. In addition, MarketAmerica forbids its Distributors from selling MarketAmerica products at almost all brick-and-mortar establishments. MarketAmerica seeks to limit the Distributors to one-on-one situations in private locations (such as the Distributor's or a friend's home), but achieving significant, profitable retail sales by this method is extremely difficult.

110.    Plaintiffs do not contend that Distributors make no retail sales at all.  But Plaintiffs do allege that relatively little of the revenues received by Distributors—including both money paid them by MarketAmerica and proceeds from retail sales—comes from retail sales, and the vast majority comes from Distributors' payments to MarketAmerica.  Thus, the Distributors are primarily feeding off each other.

111.    MarketAmerica also makes false and/or inadequate income disclosures in that in many instances, it does not disclose income of those who are distributors, or provides statements of income that are false, and/or misleading, that affirmatively represent a profitable business opportunity, when there is no profit to be made, and nearly all participants in fact, lose money.

112. Because MarketAmerica pays the executives at the top of the pyramid exorbitant incomes and because little non-Distributor money comes into the scheme to pay Distributors, the Distributors at the bottom of the pyramid must lose money. These losses are borne out by MarketAmerica's own financial disclosures and the experiences of the Plaintiffs and multiple other Distributors.

**F.     The Individual Defendants and Market America Promote the Pyramid Scheme**

113. The Individual Defendants are persons at the top of MarketAmerica's pyramid. All of the Individual Defendants were distribtors or executives. They are in the top 1% of Distributors who make the most lucrative bonuses. They actively participate in the MarketAmerica pyramid scheme, and they profit from the promotion of the scheme and the compensation plan at the expense of the vast majority of Distributors.

114. MarketAmerica and the Individual Defendants promote the pyramid scheme and make misleading claims of financial success, that one can retire their parents, that one can bring their family over from China to gain sustenance through MarketAmerica, and other similar absurd claims..

115. In coordination with MarketAmerica, the Individual Defendants have flooded the internet with promotional materials and videos designed to lure in new Distributors. MarketAmerica and Individual Defendants promote the scheme as a lawful program that virtually guarantees financial success. MarketAmerica and the Individual Defendants promote Market America as a reliable source of significant income.

116. To sell the financial-success promise, MarketAmerica and the Individual Defendants flaunt the wealth of the highest-ranked Distributors and those few insiders at the top of the pyramid, as examples of the riches that await new participants, if only they will work hard enough (i.e., tirelessly recruit new Distributors).

117. All of the Individual Defendants have produced videos and made statements via the internet knowingly promoting MarketAmerica's pyramid scheme and touting the financial rewards supposedly available to participants. Each of these statements furthered the pyramid scheme by

1  encouraging persons to become  Distributors and by encouraging Distributors to remain Distributors

2  and pursue the MarketAmerica business opportunity.

3     118.    The similarity of the statements made by the Individual Defendants indicates a

4  collusive effort to promote the MarketAmerica scheme. The following paragraphs set forth just a

5  small subset of publicly broadcast statements made by the Individual Defendants to promote the

6  MarketAmerica "business opportunity."

7     119.    <u>Defendant JR Ridinger ("JR")</u>.  Defendant JR is one of the most prolific

8  MarketAmerica promoters.  Scores of videos on YouTube and other public internet platforms

9  feature JR promoting, touting, and explaining the MarketAmerica business opportunity.

10

11  FIG. NO. 5

12

13

14

15

16

17

18     120.    As seen above, JR tries to make his introduction to victims appear like a rock and roll

19  concert with visual spectacles including pyrotechnics, laser lights, rock music, and jumbo screens.

20  https://www.youtube.com/watch?v=pZn5xjKpDns.

21     121.    JR represents: "[h]ow do we build a business, we have fun and we hiss a lot."  "We

22  hiss in a lot of pots."  "For those that understand no explanation is necessary."  "We can sell

23  anything."

24     122.    Further, JR represents "[i]t follows wherever people connect to maximize to

25  infinity."  "One person doesn't do it, it creates swiss cheese below.  In reality if one person doesn't

26  do it, you have to get three in under them, and three in under them."  "It always maximizes profit."

27  "We are executive directors in one year.  Some Chinese have done it faster.  [Except unlike them]

28  we buy tickets."

FIG NO. 6



FIG. NO. 7



123. <u>Defendant Loren Ridinger ("Loren")</u>. Loren represents: "[w]e build people with teams." "When you buy, you can buy from yourself." "If you can't buy from yourself…[convert spending to earning] why are you here?" Loren further represents that distributors, "[n]eed to buy a ticket here [for the next event MarketAmerica is having]." "If you don't buy it here, *you are not coming [to the next event]*." Loren demands that distributors "build from event to event," "build an empire, people power." Among other things, Loren commands to her victims that through the MarketAmerica business opportunity, one can "[b]e a lion for a day rather than being a slave for thousands of years." "We build people power," and later she claims MarketAmerica requires an - "empire of people."

FIGURE NO. 8



124. <u>Defendant Marc Ashley</u>. Defendant Marc Ashley ("Ashley") is the COO of MarketAmerica and regularly promotes the recruiting scheme of MarketAmerica at events by discussing the recruitment scam of MarketAmerica

FIGURE NO. 9



FIGURE NO. 10



FIGURE NO. 11



125. Carl Eklund, an executive of MarketAmerica confirms in various seminar materials that the MarketAmeria business has "not changed" because of the shopping annuity, the shopping annuity just makes the business easier.

126. Defendants accepted, ratified, endorsed, and/or made the misrepresentations omissions of fact, and concealments (and or such similar statements) contained in ¶¶ 91-125 to the Plaintiffs from when they joined, and such representations (or similar representations) have continued as in the general public, to the present date.

ORIGINAL COMPLAINT – CLASS ACTION

24

G.      **Plaintiffs Are Victims Of The Pyramid Scheme**

127.    Yang became a "participant" in 2010 through 2016 by making purchases and buying the starter pack.  Plaintiff paid the monthly membership for years, attended multiple seminars, and in total paid MarketAmerica approximately $35,000 towards this opportunity.  Yang also expended significant amounts towards travel, lodging, and accommodations.  Plaintiff Yang was deceived by MarketAmerica's misleading opportunity believing, the opportunity was a legitimate way to earn money (even though that representation by Market and the Individual Defendants was false), and Plaintiff Yang did in fact lose money as a result of Defendants' unfair, unlawful, and fraudulent business practice.  The endless chain account to which Yang is a party, has not been closed by market America at any time, and his claim is based on among other writings, an open account stated for monies owed and spent as reflected in the books and records, as reflected in invoices, invoices for yearly membership, bills, tickets stubs, and receipts. Through this action, Plaintiff Yang is seeking equitable/ injunctive relief in that he seeks rescission of any documents forming his participation in the endless chain which include invoices and receipts, payment on accounts stated, and the return of such amounts he was paid by virtue of being a participant in the Market America pyramid scheme.  Market America continues its same business practices to this day, and is likely to continue its business practices into the future. Market America continues to market its business practices and distributorship opportunity to all 50 states. Yang did not sign the distributorship agreement in the form referred to in Figure No. 12 and did not enroll with Market America electronically, but instead signed the form presented by his upline.

128.    Ollie Lan aka Ruoning Lan, is and at all relevant times, resides in the County of Los Angeles.  Lan became a "participant" in December of 2015 through present.  Lan paid monthly distributor fees for three months.  Plaintiff Lan was deceived by MarketAmerica's misleading opportunity believing the opportunity was a legitimate way to earn money (even though that representation was false), and Plaintiff Lan did in fact lose money as a result of Defendants' unfair, unlawful, and fraudulent business practice.  Plaintiff Lan lost approximately $7,000 as a result of Defendants' pyramid scheme. The endless chain account to which Lan is a party, has not been closed by market America at any time, and his claim is based on among other

writings, an open account stated for monies owed and spent as reflected in the books and records, as reflected in invoices, invoices for yearly membership, bills, tickets stubs, and receipts. Through this action, Plaintiff Lan is seeking equitable/ injunctive relief in that he seeks rescission of any documents forming his participation in the endless chain which include invoices and receipts, payment on accounts stated, and the return of such amounts he was paid by virtue of being a participant in the Market America pyramid scheme. Market America continues its same business practices to this day, and is likely to continue its business practices into the future. Market America continues to market its business practices and distributorship opportunity to all 50 states.

129.   Plaintiff Liu Liu, is and at all relevant times, resides in the County of Los Angeles. Liu became a participant in 2016 through present. Plaintiff Liu was deceived by MarketAmerica's misleading opportunity believing the opportunity was a legitimate way to earn money (even though that representation was false), and Plaintiff Liu did in fact lose money as a result of Defendants' unfair, unlawful, and fraudulent business practice. Plaintiff Liu lost approximately $10,000 as a result of Defendants' pyramid scheme. The endless chain account to which Lan is a party, has not been closed by market America at any time, and his claim is based on among other writings, an open account stated for monies owed and spent as reflected in the books and records, as reflected in invoices, invoices for yearly membership, bills, tickets stubs, and receipts. Through this action, Plaintiff Liu is seeking equitable/ injunctive relief in that he seeks rescission of any documents forming his participation in the endless chain which include invoices and receipts, payment on accounts stated, and the return of such amounts he was paid by virtue of being a participant in the Market America pyramid scheme. Market America continues its same business practices to this day, and is likely to continue its business practices into the future. Market America continues to market its business practices and distributorship opportunity to all 50 states.

130.   Plaintiffs Lan and Liu did not make any retail sales whatsoever.

131.   Plaintiff Jinhua Zou became a participant and joined the business.

132.   Plaintiff Yu Xia Lu became a participant and joined the business.

H.   **Independent Distributor Application And Agreement**

133.    At some times during Market America's history, it has proposed a document labeled, "Independent Distributor Application and Agreement" (the "Agreement").

FIGURE NO. 12



134.    The signature line of the Agreement, only requires a MarketAmerica distributor to "AGREE TO THE **TERMS** SET FORTH IN THIS AGREEMENT."  (emphasis added). None of the "terms" in the Agreement provide for arbitration.  Nowhere on the form, does Market America ask some class members to assent or sign that they agree to any *conditions*.  No term of the Agreement provides for arbitration, so no class member is bound by arbitration.

135.    At the bottom of the form and *below* the signature box (See Figure No. 12 above), next to a box labeled "INTERNAL USE ONLY," the Agreement states "SEE REVERSE SIDE FOR TERMS **AND CONDITIONS** OF THIS AGREEMENT." (emphasis added).  Because of the design of this form, the intended arbitration agreement is completely lacking in mutual assent.

136.    The "conditions" on the reverse side include an arbitration provision, which provides as follows:

29. Arbitration. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall ultimately be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrators may be entered in a court of competent jurisdiction. You understand that this arbitration provision means you are giving up the right to have any dispute you have regarding this Agreement heard by a jury and determined in a court of law. The arbitration shall be heard by one arbitrator, and it shall take place in Greensboro, North Carolina. Either party may seek emergency or provisional relief in the General Court of Justice, Guilford County, North Carolina, prior to invoking the arbitration remedy.

(Agreement, ¶29).

30. Entire Agreement. This Agreement and Part 2 of the Career Manual constitute the entire agreement *between you and Market America*.

(Agreement, ¶30) (emphasis added).

137.    The arbitration provision is unenforceable because no class members were required to assent to the arbitration conditions by the terms of the Agreement itself, and the signature line block confirms only the "terms" of the Agreement need be assented to.  In the alternative, this form is highly misleading.

138.    The arbitration policy also includes the following provision:

Distributor Grievances. You agree to submit any complaint, grievance, or claim against another Distributor or MA in accordance with the Grievance Procedure set forth in the Career Manual. You agree not to seek arbitration, take legal action except in accordance with the Grievance Procedure, or contact any regulatory agency regarding your MA Distributorship until all steps of the Grievance Procedure have been completed. If you breach this covenant, you may be liable to MA for damages and legal costs, including reasonable attorney's fees.

(Agreement, ¶20).

139.    Buried in the Career Manual, MA commands: "The Distributor agrees to submit any complaint, grievance or claim against a Distributor or the company to the Appeals Board and Dispute Resolution Board for settlement prior to contacting any regulatory agency or taking any legal action."  (Career Manual pp. 42).

140.    The complaint must cite "policies and procedures affected," and provide all evidence that may not be available to a distributor. (*Id.*) Any such complaint will routinely result in a denial by MA because the MA Appeals Board is comprised of officers of MA (and their cronies) who have a financial interest in denying claims. If a distributor is unsatisfied with the "written response" from the MA Appeals Board, the Dispute Resolution Board (DRB) is the "final appeal process regarding company rulings or decisions concerning policies, procedures, rules and regulations. The DRB only reviews facts and enforces company policies and procedures. The DRB does not set policy, change policy, or make exceptions to rules and regulations. It functions to interpret policies, procedures, rules and regulations where no precedent exists or where unique mitigating circumstances are encountered." Career Manual, Ch. 14, § 8(B).

141.    To invoke the DRB, a distributor must complete and submit a DRB Submission form, all documents, all evidence, and a $50.00 filing fee which is non-refundable. If the Distributor disagrees with the decision of the DRB, the Distributor's only recourse is to request arbitration within 90 days of the date of the DRB decision letter. (Id.) (emphasis added). Distributors are further commanded not to take any action through the Career Manual: "Note: You should always consult with your upline leadership before submitting an appeal to make sure: (1) that the situation merits an appeal, and (2) that the situation cannot be resolved by MA without having to submit an appeal."

142.    The Career Manual also unconscionably expands on MA's right to amend the DA as follows: "[t]he Company expressly reserves the right to alter or amend Distributor's cost of products, policies, procedures, rules, regulations…Upon notification by mailing … such amendments are automatically incorporated as part of the Independent Distributor Application and Agreement between the company and the Distributor." (Career Manual, pp. 51).

143.    There is an unconscionable 90-day statute of limitation to bring claims in the Career Manual. (Career Manual, pp. 51-52).

144.    The internal reconciliation procedure and two-tiered Kangaroo Court administrative review proceeding are a sham, and undeniably substantively unconscionable because the arbiters are Market America's officers and its cronies.

145. Market America has claimed in the course of this litigation that it is not bound by ¶20 of the DA and the Career Manual, which is made part of the DA by the express terms of the DA itself. Defendants' position, action, and conduct, constitutes waiver of its right to assert arbitration whatsoever, as it is taking a position in this litigation that terms are not enforceable. Based on the doctrine of waiver, no arbitration can be enforced.

146. In the alternative, the arbitration provision is unconscionable because *inter alia*, it permits MarketAmerica the unilateral right to modify the conditions of the arbitration policy, the rules of Commercial Arbitration for AAA do not provide for prevailing party fees and class members would have to pay the cost and fees of arbitration despite their entitlement to costs of suit and fees should they be the prevailing party in this action, the pre-litigation requirements of MarketAmerica prior to bringing action are unconscionable, and for other reasons to be asserted to the extent motion practice is initiated.

147. In the alternative, the arbitration provision is unenforceable as a matter of law and as a matter of fact on other grounds.

148. In the alternative, the arbitration provision is unenforceable related to the injunctive relief requested in this Complaint, based on recent California Supreme Court authority.

149. To the extent "[t]he arbitration shall be heard by one arbitrator, and it shall take place in Greensboro, North Carolina" is considered a "forum selection clause", the forum selection clause should be analyzed under Federal Law, and such clause is unenforceable because independently, and in the alternative, (1) it was the product of fraud and overreaching, (2) Plaintiffs would effectively be deprived of their day in court if this clause was enforced, (3) enforcement of this provision would contravene a strong public policy of the forum in which the suit is brought (particularly in light of the legislative history of the Endless Chain law); (4) this is a franchise under California Law and franchise agreements may not be transferred. For each of these reasons, this provision cannot be enforced to require transfer.

150. Market America Mexico, Market America Hong Kong, Market America Taiwan, Market America United Kingdom, Market America Mexico, Market America Spain, Market America Singapore, Market America Malaysia (through Market America and Shop.com) are also

engaged in unfair business practices by virtue of money laundering significant sums. Specifically, the Defendants have knowledge that they may not engage in multi-level marketing in China and that it is illegal to do so without restrictions and a license issued by China, but they do so with impunity through Hong Kong and conceal the fact that monies are being received illicitly from China by masking transmissions that are of criminal and civilly culpable nature, through which they use well-resourced Chinese investors and U.S. Law firms operating out of China to facilitate these transactions.

151. Market America Mexico, Market America Hong Kong, Market America Taiwan, Market America United Kingdom, Market America Mexico, Market America Spain, Market America Singapore, Market America Malaysia (through Market America and Shop.com) are also engaged in unfair business practices by virtue of money laundering in that international transfers are made into the United States, and specifically California and North Carolina, with the ultimate purpose and effect of avoiding the payment of customs, taxes, tariffs and duties. Incoming transfers are mostly not reported through this money laundering operations so as to avoid the payment of taxes, customs, duties, and tariffs and to further enrich the money-laundering and racketeering scheme.

152. To this effect, Market America Mexico, Market America Hong Kong, Market America Taiwan, Market America United Kingdom, Market America Mexico, Market America Spain, Market America Singapore, Market America Malaysia (through Market America and Shop.com) are involved in trade-based laundering, in that they under value invoices of distributors to disguise the movement of money. Market America further engages in establishing a complex network of shell companies and trusts to disguise ownership of the money.

153. Market America also engages in the special placement of persons above the Distributor base as sweet heart deals, which results in a dilution of commission and compensation for the field and specifically the Plaintiffs and the Class.

154. The Defendants also are engaged in unfair business practices because they encourage the violation of the terms of use and applicable advertising laws by encouraging brand

partners to post on wechat, facebook, Instagram, twitter, snapchat by promoting illegal pyramid conduct, making advertisements without proper disclosures.

## VI.     CLASS ACTION ALLEGATIONS

154.     Plaintiffs seek to represent a nationwide class defined as follows:

155.     Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23.

156.     Plaintiffs seek to certify a class pursuant to Fed. R. Civ. Proc. 23(a), 23(b), 23(c)(4), and 23(c)(5), if necessary.

157.     Plaintiffs seek relief on behalf of themselves and the following class: persons who paid start-up fees, monthly fees, annual fees, seminar ticket fees, any other fees imposed by Market America, and/or purchased products from MarketAmerica between March 9, 2010, to the present date, who lost money from their participation in the MarketAmerica scheme.

158.     Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, Plaintiffs also seek to represent a sub-class in California, defined as follows: persons residing in California who paid start-up fees, monthly fees, annual fees, seminar ticket fees, any other fees imposed by Market America, and/or purchased products from MarketAmerica between March 9, 2010, to the present date, who lost money from their participation in the MarketAmerica scheme.

159.     Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, Plaintiffs also seeks to represent a sub-class of all worldwide participants of MarketAmerica, defined as follows: persons residing anywhere in the World who paid start-up fees, monthly fees, annual fees, seminar ticket fees, any other fees imposed by Market America, and/or purchased products from MarketAmerica between March 9, 2010, to the present date, who lost money from their participation in the MarketAmerica scheme.

160.     Pursuant to the previous paragraph of this complaint, the damage to any person living anywhere else other than the United States involved a domestic injury to business or property because all contracts of independent business owners were negotiated, executed, and stored on a server in the United States owned by MarketAmerica, and are available on the

worldwide web, involved a significant connection to domestic commerce in that the labeling, products, and other parts of the manufacturing and sales and marketing process were conducted from the United States, and for other reasons to be provided according to proof, and after the opportunity for discovery.

161. Excluded from the class are the Defendants, family members, this Court, and any "Director" of MarketAmerica.

162. Plaintiffs seek to pursue a private attorney general action for public injunctive relief for themselves and all members of the class, and they satisfy the standing and class action requirements.

163. While the exact number of members in the Class and Subclasses are unknown to Plaintiffs at this time, and can only be determined by appropriate discovery, membership in the class and subclasses is ascertainable based upon the records maintained by Defendant. It is estimated that the members of the Class are greater than 250,000, nationwide.

164. Therefore, the Class and Subclasses are so numerous that individual joinder of all Class and Subclass members is impracticable.

165. There are questions of law and/or fact common to the class and subclasses, including but not limited to: (a) Whether the arbitration policy is enforceable; (b) Whether MarketAmerica is operating an endless chain; (c) Whether Distributors paid money to MarketAmerica for (1) the right to sell a product and (2) the right to receive, in return for recruiting others, rewards which were unrelated to the sale of the product to retail consumers; (d) Whether MarketAmerica's rules apply to Section 327 claims; (e) If the MarketAmerica rules do apply, are MarketAmerica's rules effective; (f) If the MarketAmerica rules do apply, and MarketAmerica's rules are effective, did MarketAmerica enforce those rules; (g) Whether MarketAmerica or the Individual Defendants omitted to inform the Plaintiffs and the plaintiff class that they were entering into an illegal scheme where an overwhelming number of participants lose money; (h) Whether MarketAmerica's statements of compensation during the Class Period were deceptive and misleading; (i) Whether MarketAmerica's conduct constitutes an unlawful, unfair and/or deceptive trade practice under California state law; (j) Whether MarketAmerica's conduct

1  constitutes unfair competition under California state law; and (k) Whether MarketAmerica's

2  conduct constitutes false advertising under California state law.

3  166.  These and other questions of law and/or fact are common to the class and

4  subclasses and predominate over any question affecting only individual class members.

5  167.  Plaintiffs' claims are typical of the claims of the class and subclasses in that

6  Plaintiffs were Distributors for Defendant MarketAmerica and lost money because of the illegal

7  scheme.

8  168.  Plaintiffs will fairly and adequately represent the interests of the class and

9  subclasses. Plaintiffs' claims are typical of those of the class and subclasses.  Plaintiffs' interests

10  are fully aligned with those of the class and subclasses. And Plaintiffs have retained counsel

11  experienced and skilled in complex class action litigation.

12  169.  Class action treatment is superior to the alternatives for the fair and efficient

13  adjudication of the controversy alleged, because such treatment will allow many similarly-situated

14  persons to pursue their common claims in a single forum simultaneously, efficiently and without

15  unnecessary duplication of evidence, effort, and expense that numerous individual actions would

16  engender.

17  170.  Plaintiffs know of no difficulty likely to be encountered in the management that

18  would preclude its maintenance as a class action.

19  VI.  **CLASS ACTION COUNTS**

20  **COUNT I**

21  **ENDLESS CHAIN SCHEME; California Penal Code § 327 and Section 1689.2 of the**

22  **California Civil Code**

23  (Plaintiffs on behalf of themselves and the Class, Against All Defendants including DOES 1

24  through 100)

25  171.  Plaintiffs reallege all allegations as if fully set forth herein, and incorporate

26  previous allegations by reference.

27  172.  Section 1689.2 of the California Civil Code provides: "[a] participant in an endless

28  chain scheme, as defined in Section 327 of the Penal Code, may rescind the contract upon which

the scheme is based, and may recover all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme."

173.    Each of the Defendants are culpable under Section 327 of the Penal Code because they have operated and/or contrived and/or prepared and/or set up and/or proposed an endless chain.

174.    The MarketAmerica operations constitute a scheme for the disposal or distribution of property whereby class members pay a valuable consideration for the chance to receive compensation for introducing one or more additional persons into participation in the scheme or for the chance to receive compensation when a person introduced by the participant introduces a new participant.

175.    Independently, the MarketAmerica operations constitute an endless chain because members pay an initial fee and then sign up for indefinite monthly automatic deductions to maintain their memberships, only to have a membership terminated if he fails to pay.

176.    Independently, the MarketAmerica operations constitute an endless chain because defendants tell victims they earn commissions by recruiting other people to buy memberships and the members, were in turn, instructed to recruit more members.

177.    Independently, the MarketAmerica operations constitute an endless chain because Defendants' commissions, income, lottery gifts like vehicles, and free products were based on a current member's sales of memberships to new members whether any of these members actually used their MarketAmerica membership to sell any products.

178.    Plaintiffs and the class have suffered an injury in fact and have lost money or property because of MarketAmerica and the Individual Defendants' operation of an endless chain, business acts, omissions, and practices.

179.    Plaintiffs and the class are entitled to: (a) rescind the contracts/agreements upon which the scheme is based and recover all consideration paid under the scheme, less any amounts paid or consideration provided to the participant under the scheme; (b) restitution, compensatory and consequential damages (where not inconsistent with their request for rescission or restitution); and (c) attorneys' fees, costs, pre and post-judgment interest.

## COUNT II

**Unfair and Deceptive Practices Claims Under Cal. Bus, & Prof. Code § 17200, *et seq*.**

(Plaintiffs on behalf of themselves and the Class Against All Defendants including DOES 1 through 100)

180.     Plaintiffs reallege all allegations as if fully set forth herein, and incorporate previous allegations by reference.

181.     All claims brought under this Third Cause of action that refer or relate to the unlawful, fraudulent or unfair "endless chain" of the Defendants are brought on behalf of Plaintiffs and the Class.

182.     All claims brought under this Third Cause of Action that refer or relate to the unlawful, fraudulent or unfair the statements, the touted MarketAmerica "business opportunity" are brought on behalf of Plaintiffs and the Class.

183.      MarketAmerica has engaged in constant and continuous unlawful, fraudulent and unfair business acts or practices, and unfair, deceptive, false and misleading advertising within the meaning of the California Business and Professions Code § 17200, *et seq*. The acts or practices alleged constitute a pattern of behavior, pursued as a wrongful business practice that has victimized and continues to victimize thousands of consumers for which Plaintiffs' seek to enjoin from further operation.  The MarketAmerica Sales and Marketing Plan Is Unlawful.

184.     Under California Business and Professions Code § 17200, an "unlawful" business practice is one that violates California law.

185.     MarketAmerica's business practices are unlawful under § 17200 because they constitute an illegal "endless chain" as defined under, and prohibited by, California Penal Code § 327.

186.     MarketAmerica utilizes its illegal "endless chain" with the intent, directly or indirectly, to dispose of property in MarketAmerica's products and to convince Distributors to recruit others to do the same.

187.      MarketAmerica's business practices are unlawful pursuant to §17200 because they violate §17500 *et seq*., as alleged in the Third Cause of Action.

ORIGINAL COMPLAINT – CLASS ACTION

188.     Under California Business and Professions Code § 17200, a "fraudulent" business practice is one that is likely to deceive the public.

189.     MarketAmerica's business practices are fraudulent in two separately actionable ways: (1) MarketAmerica's business constitutes an illegal and deceptive "endless chain;" (2) the touted, yet non-existent, MarketAmerica "business opportunity" is for everyone, including but not limited to MarketAmerica's massive advertising campaign and the misleading statements of compensation.

190.     First, as detailed herein, Defendants promoted participation in the MarketAmerica endless chain, which has a compensation program based on payments to participants for the purchase of product by participants, not the retail sale of products or services.

191.     MarketAmerica has made numerous misleading representations about the business opportunity of MarketAmerica and the income that a recruit or a distributor can realize by becoming a distributor and participating in the scheme.

192.     MarketAmerica knew, or should have known, that the representations about the business opportunity of MarketAmerica were misleading in nature.

193.     As a direct result of MarketAmerica' fraudulent representations and omissions regarding the MarketAmerica endless chain described herein, MarketAmerica wrongly acquired money from Plaintiff and the members of the classes.

194.     Second, MarketAmerica touted, in numerous different ways as part of a massive advertising campaign, a "business opportunity," which MarketAmerica also repeatedly and in many ways represented, among other things, as being "for everyone" and allowing "full time" or "part time" opportunities.

195.     The massive advertising campaign included among other things, the website, emails, websites, presentations by MarketAmerica, training, word of mouth among Distributors, and events.

196.     As part of this campaign and a further inducement to potential Distributors, MarketAmerica made and disseminated statements of compensation that further misled the public, among other things: (1) by using cryptic and technical terms known to MarketAmerica but not to

the general public or to those exploring the claimed "business opportunity," (2) by highlighting the successful persons, i.e., those that received compensation from MarketAmerica, and the average gross compensation paid by MarketAmerica to those winners, (3) by failing to disclose the actual number of successful persons as compared to the number of Distributors who received no compensation from MarketAmerica (i.e., the "losers"), and (4) by downplaying and omitting the risks and costs involved in starting an MarketAmerica Distributorship and succeeding in such a Distributorship.

197.    In reality, the touted "business opportunity" was only for a select few, and those that were recruited specially.  And these numbers did not include expenses incurred by distributors in the operation or promotion of their businesses, meaning there were likely more net losers who made no profit at all.

198.    MarketAmerica knew, or should have known, that the selective information presented to distributors in the compensation and its massive adverting campaign during that time frame touting its purported "business opportunity" was likely to mislead the public and did in fact mislead the public into believing that there was a legitimate "business opportunity" in which Distributors, or a large portion of them, could make money in either a full or part time capacity. In fact, however, there was no such "business opportunity," except for a very select few.

199.    As a direct result of MarketAmerica' fraudulent representations and omissions regarding the Statement and the massive adverting campaign during that time frame and thereafter touting MarketAmerica's purported "business opportunity" described herein, MarketAmerica wrongly acquired money from Plaintiffs and the members of the classes.

200.    The named Plaintiffs have standing to bring these § 17200 claims under the fraudulent prong, and can demonstrate actual reliance on the alleged fraudulent conduct.

201.    For instance, Plaintiffs have been in receipt of misleading and false financial statements and marketing materials/seminar papers, which promoted the MarketAmerica' scheme and claimed "business opportunity" and contained material false representations regarding the success Distributors could achieve through MarketAmerica by purchasing products and recruiting others to do the same.

202.     There were other representations made to Distributors as part of the massive advertising campaign regarding the claimed "business opportunity," on which Plaintiff or some of the Class Members, reasonably believed the representations they could succeed in the "business opportunity," did not return the refund, purchased MarketAmerica products and did not immediately return them, signed up as MarketAmerica Distributors, and attempted to and recruited others to do the same.  These other representations include, but are not limited to the following: (a) emails from MarketAmerica that promoted MarketAmerica and contained material false representations regarding the success that a distributor could achieve through MarketAmerica by purchasing products and recruiting others to do the same; (b) websites, such as www.shop.com and marketamerica.com, which promoted the fraudulent scheme through videos of Individual Defendants containing material false representations regarding the "business opportunity" available to Distributors and the wealth that a distributor could get by agreeing to become an MarketAmerica distributor; (c) Presentations by MarketAmerica Distributors which contained material false representations regarding the "business opportunity" and the success that a distributor could get through MarketAmerica by purchasing products and recruiting others to do the same; (d) Presentations by MarketAmerica, including the presentations described in this complaint, which contained material false representations regarding the "business opportunity" and the success that a distributor could get through MarketAmerica by purchasing products and recruiting others to do the same; (e) Training and events where MarketAmerica Distributors made material false representations regarding the "business opportunity" and the success that a distributor could get through MarketAmerica by purchasing products and recruiting others to do the same.

203.     To the extent proof of reliance is required of Plaintiffs, MarketAmerica and the Individual Defendants knew that Plaintiffs and the class would reasonably rely on their representations and omissions, which would cause the Plaintiffs and the class joining the fraudulent endless chain scheme and purchasing the products, and Plaintiffs did in fact reasonably rely upon such representations and omissions.

204.     Indeed, had Plaintiffs and the class known that MarketAmerica and its Individual Defendants were promoting an endless chain, they would not have become MarketAmerica Distributors in the first place and, if learned after becoming a distributor, they would not have purchased MarketAmerica products thereafter.

205.     Had Plaintiffs and the class known that MarketAmerica was promoting a "business opportunity" that did not exist except for a select few, they would not have become MarketAmerica Distributors in the first place and, if learned after becoming a distributor, they would not have purchased MarketAmerica products thereafter.

206.     Defendants accepted, ratified, endorsed, and/or made the misrepresentations omissions of fact, and concealments (and or such similar statements) contained in ¶¶ 91-125 to the Plaintiffs from when they joined, and such representations (or similar representations) have continued as in the general public, to the present date.

207.     Finally, the fraudulent acts, representations and omissions described herein were material not only to Plaintiffs and the class (as described in this complaint), but also to reasonable persons.

208.     Under California Business and Professions Code § 17200, a business practice is "unfair" if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury which outweighs its benefits.

209.     For the reasons set forth herein and above, MarketAmerica's promotion and operation of an unlawful and fraudulent endless chain, and its fraudulent representations and omissions regarding its purported "business opportunity," are also unethical, oppressive, and unscrupulous in that MarketAmerica is and has been duping Plaintiffs and the class out of billions, or at least hundreds of millions, of dollars.

210.     MarketAmerica's actions have few, if any, benefits. Thus, the injury caused to Plaintiffs and the class easily and dramatically outweigh the benefits, if any.

211.     Defendants should be made to disgorge all ill-gotten gains and return to Plaintiff and the class all wrongfully taken amounts.

212.    Finally, Defendants' unlawful, fraudulent and unfair acts and omissions will not be completely and finally stopped without orders of an injunctive nature. Under California Business and Professions Code section 17203, Plaintiffs and the class seek a provisional judicial order of an equitable nature against all Defendants, including, but not limited to, an order declaring such practices as complained of to be unlawful, fraudulent and unfair, and enjoining them from further undertaking any of the unlawful, fraudulent and unfair acts or omissions described herein.

## COUNT III

**False Advertising - California Business and Professions Code § 17500, et seq.**

(Plaintiffs on behalf of themselves and the Class Against All Defendants including DOES 1 through 100)

213.    Plaintiffs reallege all allegations as if fully set forth herein, and incorporate previous allegations by reference.

214.    All claims brought under this Fourth Claim for Relief that refer or relate to the false, untrue, fraudulent or misleading endless chain of Defendants are brought on behalf of Plaintiffs and the Class.

215.    All claims brought under this Fourth Cause of Action that refer or relate to the false, untrue, fraudulent or misleading statements of income are brought on behalf of Plaintiffs.

216.    All claims brought under this Fourth Claim for Relief that refer or relate to the false, untrue, fraudulent or misleading statements of income are brought on behalf of Plaintiffs and the Class.

217.    Defendants' business acts, false advertisements and materially misleading omissions constitute false advertising, in violation of the California Business and Professions Code § 17500, *et seq*.

218.    Defendants engaged in false, unfair and misleading business practices, consisting of false advertising and materially misleading omissions regarding the purported "business opportunity," likely to deceive the public and include, but are not limited to, the items set forth above. MarketAmerica knew, or should have known, that the representations about the business opportunity of MarketAmerica were misleading in nature.

219. Because of Defendants' untrue and/or misleading representations, Defendants wrongfully acquired money from Plaintiff and the class members to which they were not entitled. The Court should order Defendants to disgorge, for the benefit of Plaintiff and all other MarketAmerica Distributors in the class who signed an agreement with MarketAmerica governed by California law their profits and compensation and/or make restitution to Plaintiff and the Class.

220. Under California Business and Professions Code Section 17535, Plaintiffs and the class seek a judicial order directing Defendants to cease and desist all false advertising related to the Defendants' illegal endless chain scheme, and such other injunctive relief as the Court finds just and appropriate.

221. Because of Defendants' untrue and/or misleading representations, Defendants wrongfully acquired money from Plaintiff and the class members to which they were not entitled. The Court should order Defendants to disgorge, for the benefit of Plaintiff and all other MarketAmerica Distributors in the class who signed a Distributor Agreement with MarketAmerica their profits and compensation and/or make restitution to Plaintiff and the class.

222. Under California Business and Professions Code Section 17535, Plaintiff and the class seek a provisional order directing Defendants to cease and desist from all false advertising related to the Defendants' illegal scheme, and such other injunctive relief as the Court finds just and appropriate. Provisional relief may permissible be brought in this District because it is the Defendants' principal place of business and west coast hub, even though they will claim they have more employees in North Carolina.

## **COUNT IV**

### (**RICO 18 U.S.C. § 1962(a)**)

(Plaintiffs on behalf of themselves and the Class Against All Defendants including DOES 1 through 100)

223. Plaintiffs reallege all allegations as if fully set forth herein, and incorporate previous allegations by reference.

224. 18 U.S.C. § 1964(c) (the PLSRA) does not apply to preclude the RICO claims in this case, for at least the following reasons: (a) Plaintiffs are not suing on any claim that arise,

relate to, or is based on any "security" and in fact, Plaintiffs will seek a preliminary determination and provisional determination prior to trial on the RICO claim, that the Terms are not a security, but instead a felonious and illegal document issued out of Monterey, CA, subject to rescission that will lose any character it has upon adjudication as an enforceable instrument; (b) there are no actionable securities claims because the distributorship is not offered on any exchange, is not registered, but instead, is part of fraudulent misrepresentations concerning what a person can earn, not what instrument would yield (the typical scenario of a security); (c) the claims at issue in this case are not actionable as "fraud in the purchase or sale of securities" because a security claim is only actionable in Federal Court and Respondents have requested that this matter proceed in arbitration; (d) the efforts in the distributorships are made by each of these Plaintiffs were significant, thus not permitting the relationship to be characterized as a security; (c) RICO claims against all other Defendants other than MarketAmerica are not actionable as "fraud in the purchase or sale of securities" because no distributorship was entered into by MarketAmerica with any other party other than MarketAmerica.

225.    MarketAmerica, the Individual Defendants, and those in conspiracy, willfully and intentionally violated and continue to violate RICO and California law/California RICO with the goal of obtaining money, directly and indirectly, through a pattern of racketeering activities in violation of the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. § 1962(a), and California Penal Code § 327.

226.    Each of the Defendants are engaged in activities of federal interstate and foreign commerce and are entities capable of holding a legal or beneficial interest in property.  All Defendants are "persons," as that term is defined by 18 U.S.C. § 1961(3).

227.    The Defendants (with the Individual Defendants) together make up the "MarketAmerica Enterprise" as an association of entities and individuals associated in fact to operate an illegal pyramid scheme.  The MarketAmerica Enterprise is not a legal entity within the meaning of "enterprise" as defined in 18 U.S.C. § 1961(4). Many of the Defendants have been members of the MarketAmerica Enterprise from at least 1992, and continuing until the present. MarketAmerica and the Individual Defendants are separate entities from the MarketAmerica

Enterprise and play separate and distinct roles in the operation of the MarketAmerica Enterprise.

    a.  MarketAmerica is creator, architect, and beneficiary of the MarketAmerica Pyramid. Through interstate wire and mails, it coordinates the MarketAmerica Enterprise, a worldwide scheme. It also pays and awards the commissions, bonuses, and other incentives to the Defendants and others through online.

    b.  All members of the pyramid scheme (whether located in the U.S. or abroad) were signed up electronically in the United States.

    c.  MarketAmerica employs the other Defendants to coordinate operations of the MarketAmerica Pyramid in the countries in which MarketAmerica operates, including determining and coordinating points, bonuses, and other incentives.

    d.  MarketAmerica employs the other Defendants as its operational arm of the MarketAmerica Enterprise to conduct racketeering activities in the U.S.

    e.  MarketAmerica employs the remainder of the Defendants to induce new recruits into the MarketAmerica Pyramid, to induce Distributors to purchase MarketAmerica' product, and to induce Distributors to recruit additional Distributors into the MarketAmerica Pyramid. The Remaining Defendants also have an agreement with MarketAmerica mandating that MarketAmerica will not reform its fraudulent markting plan without their consent.

    228.  From at least April 2009 and continuing until the present, within the County of Los Angeles, and elsewhere, MarketAmerica in association with the other defendants, did knowingly, willfully and unlawfully conduct and participate, directly and indirectly, in the conduct of the affairs of the MarketAmerica Enterprise through a pattern of racketeering activity.

    229.  From at least April 2009 and continuing until the present, MarketAmerica with each other and at different times the remaining defendants, executed a *per se* scheme to defraud through a pattern of racketeering made up of distinct acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. The MarketAmerica Enterprise engaged in and affected interstate and foreign trade. The MarketAmerica Enterprise transacts business through the instrumentalities of interstate commerce such as telephones, facsimile machines, the internet, email, wires, bank transfers, online

payments, and the United States mail and interstate commercial carrier to communicate in furtherance of the activities of the MarketAmerica Enterprise.

230.    The MarketAmerica Enterprise advertises, markets, and sells products and services throughout the United States.  The operation of the enterprise continued over several years, including activities in every state, and has affected and damaged, and continues to affect and damage, commercial activity.

231.    To further the goals of the MarketAmerica Enterprise, which were to (1) earn money through fraudulent means, (2) entice individuals to become MarketAmerica Distributors, (3) entice individuals to purchase products from MarketAmerica, (4) entice individuals to recruit others to become MarketAmerica Distributors and profit off those recruits' purchases of MarketAmerica' products, (5) reap large profits for themselves based on false representations, MarketAmerica and the remaining defendants engaged in various forms of illegal activity, including (a) mail fraud, (b) wire fraud, and (c) conspiracy.

232.    The pattern of racketeering activity alleged is distinct from the MarketAmerica Enterprise. Each act of racketeering activity is distinct from the MarketAmerica Enterprise in that each is a separate offense committed by an entity or individual while the MarketAmerica Enterprise is an association of entities and individuals. The MarketAmerica Enterprise has an ongoing structure and/or organization supported by personnel and/or associates with continuing functions or duties.

233.    The racketeering acts set out above and below, and others, all had the same pattern and similar purpose of defrauding Plaintiff and the class for the benefit of the MarketAmerica Enterprise and its members. Each racketeering act was related, had a similar purpose, involved the same or similar participants and methods of commission and had similar results affecting Plaintiff and the class. The racketeering acts of mail and wire fraud were also related to each other in that they were part of the MarketAmerica Enterprises' goal to fraudulently induce Plaintiff and the Class to join the illegal scheme, purchase products, and recruit others to join the scheme.

234.    MarketAmerica and other Defendants' wrongful conduct has been and remains part of MarketAmerica Enterprises' ongoing way of doing business and constitutes a continuing threat

to the property of Plaintiff and the class. Without the repeated acts of mail and wire fraud, the MarketAmerica Enterprise's fraudulent scheme would not have succeeded.

235.    Revenue gained from the pattern of racketeering activity, which constitutes a significant portion of the total income of MarketAmerica and the Individual Defendants, was reinvested in the operations of the MarketAmerica Enterprise for the following purposes: (a) to expand the operations of the MarketAmerica Enterprise through additional false and misleading advertising and promotional materials aimed at recruiting new Distributors; (b) to facilitate the execution of the illegal scheme; and (c) to convince current Distributors to recruit new Distributors, and purchase MarketAmerica's products.

236.    Plaintiffs and the class were injured by the reinvestment of the racketeering income into the MarketAmerica Enterprise because they invested billions of dollars of their own money through their purchasing of products, promotional materials, and MarketAmerica products, all of which were packaged and shipped at inflated charges.

237.    In connection with promoting and executing their illegal scheme, members of the MarketAmerica's Enterprise knowingly and recklessly placed and caused to be placed in the United States mail or by interstate commercial carrier, or took or received therefrom, matters or things to be sent to or delivered by the United States mail or by interstate commercial carrier comprising, among other things product, invoices, letters, promotional materials, brochures, products and checks to Plaintiff and the class and received communications between and among themselves through the United States mail, in all fifty states and the District of Columbia. It was reasonably foreseeable that these mailings or receipts would take place in furtherance of the fraudulent scheme.

238.    In connection with promoting and executing their illegal scheme, members of the MarketAmerica's Enterprise engaged in wire fraud, in violation of 18 U.S.C. § 1343, by, among other things, knowingly and recklessly transmitting or causing to be transmitted with wire communications, in interstate and foreign trade, materials promoting the illegal MarketAmerica Pyramid on internet web sites, radio, satellite radio, television, email, facsimile, telephone, and text messages, including promotional materials, registration information, product information, and

invoices. MarketAmerica and Individual Defendants maintain websites on the internet where the enterprise was perpetrated.

239.    MarketAmerica's Distributors can and do buy products and are given inducements to continue working as Distributors within the MarketAmerica Pyramid. MarketAmerica maintains various websites that host promotional videos featuring the Individual Defendants promoting the unlawful scheme and other marketing materials featuring the Individual Defendants promoting the illegal scheme. MarketAmerica sent and received these interstate wire communications to and from all fifty states and the District of Columbia.

240.    Each Defendant has promoted the MarketAmerica Pyramid and MarketAmerica Enterprise. Each use of the mail or wire by Defendants and the Individual Defendants done in furtherance of the MarketAmerica pyramid is an act of racketeering.

241.    The pattern of racketeering activity through which the affairs of the MarketAmerica Enterprise were conducted and in which MarketAmerica and the Individual Defendants participated consisted of the following:

**Racketeering Act Number One**

242.    Plaintiffs received, through private commercial interstate carrier and the internet portal maintained by MarketAmerica, certain materials, which promoted the MarketAmerica Enterprise and contained material false representations regarding the success Distributors could achieve through MarketAmerica by purchasing products and recruiting others to do the same, while not including the disclosures required under SAMP, and by inflating figures and representations.

243.    Because of their receipt of these materials, Plaintiffs signed up with MarketAmerica, purchased MarketAmerica products, and recruited others to do the same. The materials and package items were sent to Plaintiffs with the purpose and intent of promoting the MarketAmerica Enterprise's illegal scheme, all in violation of 18 U.S.C. § 1341.

**Racketeering Act Number Two**

244.    Plaintiffs received, through private commercial interstate carrier, and the internet portal maintained by the Defendants, income disclosures, which promoted the MarketAmerica

Enterprise and the MarketAmerica pyramid through the sales and marketing plan, and which

contained material false representations regarding the success that Distributors could achieve

through MarketAmerica by purchasing product packages and recruiting others to do the same.

245.    Because of their receipt of the representations, Plaintiffs signed up with

MarketAmerica, purchased MarketAmerica product packages, and recruited others to do the same.

The income disclosure statements with the purpose and intent of promoting the MarketAmerica

Enterprise's illegal scheme, all in violation of 18 U.S.C. § 1341.

**Racketeering Act Number Three**

246.    Plaintiffs ordered, through interstate wire transmissions over the internet product

packages, which were promoted by the MarketAmerica Enterprise as the means by which

Distributors such as Plaintiffs could pay for their position and obtain profits. MarketAmerica

hosted these websites. Plaintiff Yang paid MarketAmerica for these products using an electronic

transfer of funds. MarketAmerica shipped Plaintiff Yang these products through private

commercial interstate carrier. MarketAmerica coordinated through interstate wires on at least a

monthly basis following the order the collection and accruing of the rewards associated with those

purchases. Because of the promised rewards, points, commissions, and opportunity to advance up

the MarketAmerica Pyramid, Plaintiff Yang purchased MarketAmerica Products, paid for those

MarketAmerica product packages, and received those products, using instrumentalities of

interstate commerce. Defendants' actions violated 18 U.S.C. §§ 1341 and 1343.

**Racketeering Act Number Four**

247.    Throughout April of 2009 and continuing through today, MarketAmerica

distributed information by interstate wire transmissions over the internet, such as

www.MarketAmerica.com and Shop.com. The MarketAmerica websites promoted the fraudulent

scheme through videos of Individual Defendants containing material false representations

regarding the business opportunity available to Distributors, and the wealth that a distributor could

get by agreeing to become an MarketAmerica distributor.  Plaintiffs became MarketAmerica

distributors and maintained their position as MarketAmerica distributors and continued to order

MarketAmerica products and recruit others to do the same. This conduct violated 18 U.S.C. §

1343.

## Racketeering Act Number Five

248.    Throughout 2016, the members distributed information by interstate wire transmissions over the internet promoting MarketAmerica as described in this Complaint. These videos promoted the fraudulent pyramid scheme and contained material false representations regarding the wealth that a recruit or MarketAmerica distributor could achieve if that recruit became an MarketAmerica distributor and if a distributor purchased MarketAmerica products. This violated 18 U.S.C. § 1343.

## Racketeering Act Number Six

249.    MarketAmerica and many of the Defendants secretly placed promoters, henchmen, friends, and family members above Plaintiffs and Distribuross, preventing the lower rungs of the pyramid from being paid anything at all, in attempt to squeeze all potential sources of revenues, commission, and other consideration.

## Racketeering Act Number Seven

250.    MarketAmerica and many of the Defendants engaged in wire transfers for illicit purposes, including to do business in countries where such operations were restricted, knowing that the incoming and outgoing wires were for an illegal and criminal purpose, including without limitation, the operation of an unlicensed criminal chain letter and pyramid scheme with Chinese residents without appropriate licensing.  Further, MarketAmerica and many of the Defendants processed transactions through investors to avoid incurring taxes, customs, duties and other liabilities rightfully owed to the United States Government, and State of California.

## Racketeering Act Number Eight

250.    Defendants secretly placed promoters, henchmen, friends, and family members above Plaintiffs and Distributors, preventing the lower rungs of the pyramid from being paid anything at all, in attempt to squeeze all potential sources of revenues, commission, and other consideration.

251.    MarketAmerica, the Defendants, and the Individual Defendants' representations and omissions were the proximate cause of Plaintiffs, and the class, joining the fraudulent scheme

1    and purchasing the products.

2          252.    To the extent proof of reliance is legally required, in engaging in the

3    aforementioned-wire and mail fraud, MarketAmerica, the Defendants, and the Individual

4    Defendants knew that Plaintiffs and the class would reasonably rely on their representations and

5    omissions, which would cause the Plaintiffs and the class joining the fraudulent pyramid scheme

6    and purchasing the products.

7          253.    Market America, Defendants and the Individual Defendants knew that the

8    misrepresentations and omissions described above in promoting and executing the fraudulent

9    scheme were material because they caused Plaintiffs and the class to join and participate in the

10   illegal scheme.

11         254.    Had Plaintiffs and the class known that MarketAmerica and the Individual

12   Defendants were promoting an illegal scheme, they would not have joined the MarketAmerica'

13   pyramid scheme.

14         255.    The Defendants', MarketAmerica's and the Individual Defendants' acts of mail and

15   wire fraud were a proximate cause of the injuries that Yang and the class suffered. Because of

16   MarketAmerica and the Individual Defendants' pattern of unlawful conduct, Plaintiffs and the

17   class lost hundreds of millions of dollars, if not billions of dollars.

18         256.    Under 18 U.S.C. § 1964, Plaintiffs and the class are entitled to treble their damages,

19   plus interest, punitive damages, costs, and attorney's fees.

20                                    **COUNT V**

21                             **RICO 18 U.S.C. § 1962(c)**

22        (Plaintiffs on behalf of themselves and the Class Against All Defendants, including DOES 1

23                                    through 100)

24         257.    Plaintiffs reallege all allegations as if fully set forth herein, and incorporate all

25   previous allegations by reference.

26         258.    MarketAmerica, the Defendants, and the Individual Defendants are associated with

27   the MarketAmerica Enterprise.  In violation of 18 U.S.C. § 1962(c), MarketAmerica, the

28   Defendants, and the Individual Defendants conducted and/or participated in the conduct of the

ORIGINAL COMPLAINT – CLASS ACTION

affairs of the MarketAmerica Enterprise, including participation in activities in furtherance of the MarketAmerica Defendants' fraudulent scheme, through the pattern of racketeering activity earlier alleged.

259.    As a direct and proximate result of MarketAmerica and the Individual Defendants' violation of 18 U.S.C. § 1962(c), Plaintiffs and the class were induced to, and did, become Distributors in the MarketAmerica Pyramid scheme and purchased hundreds of millions of dollars, if not billions of dollars of the MarketAmerica products and recruited others to do the same. Plaintiffs and the class were injured by MarketAmerica's and the Individual Defendants' unlawful conduct.  The funds used to buy MarketAmerica products constitute property of Plaintiffs and the class within the meaning of 18 U.S.C. § 1964(c).

260.    Under 18 U.S.C. § 1964(c), Plaintiffs and the class are entitled to treble their damages, obtain punitive damages, plus interest, costs and attorney's fees.

### COUNT VI

### (RICO 18 U.S.C. § 1962(d))

(Plaintiffs on behalf of themselves and the Class Against All Defendants including DOES 1 through 100)

261.    Plaintiffs reallege all allegations as if fully set forth herein, and incorporate previous allegations by reference.

262.    MarketAmerica, the Defnedants, and the Individual Defendants agreed to work together in a symbiotic relationship to carry on the illegal scheme. Under that agreement, MarketAmerica, all named defendants, and those named as DOE defendants, and others conspired to violate 18 U.S.C. § 1962(a) and (c), in violation of 18 U.S.C. § 1962(d).

263.    As a direct and proximate result of MarketAmerica's and the Individual Defendants' violation of 18 U.S.C. § 1962(d), Plaintiffs and the class were injured by MarketAmerica's and the Individual Defendants' unlawful conduct. The funds used to buy MarketAmerica products constitute property of Yang and the class under 18 U.S.C. § 1964(c).

264.    Under 18 U.S.C. § 1964(c), Plaintiffs and the class are entitled to treble their damages, plus interest, costs and attorney's fees.

265. Only in the event the Court determines Plaintiffs' claims against each of the Defendants' are "actionable as securities," do Plaintiffs request leave to amend to assert a Securities claim that relates back to the filing of the action.

## COUNT VII

**The California Seller Assisted Marketing Plan Act §§ 1812.200, et seq.**

(Plaintiffs on behalf of themselves and the Class Against All Defendants including DOES 1 through 100)

266. Plaintiffs reallege and incorporate by reference all of the other allegations as if set forth herein.

267. The MarketAmerica seller assisted marketing plan meets the definitions of a "seller assisted marketing plan" under the California Seller Assisted Marketing Plan Act, Cal. Civ. Code §§ 1812.200, et seq. and did not qualify for any exemptions thereunder. Specifically, the MarketAmerica seller assisted marketing plan involved Defendants' sale or lease of product, equipment, supplies, and services for initial payment (including the payment on the premium) exceeding $500 to the Plaintiffs and the Class in connection with or incidental to beginning, maintaining, or operating their respective MarketAmerica distributorship.

268. From within California, Defendants individually and by and through their agents advertised and otherwise solicited the purchase or lease of product, equipment, supplies, and services to the Plaintiffs and the Class as alleged above.

269. Defendants, individually and through its/their agents represented that: (1) Plaintiffs and the Class were likely to earn an amount in excess of the initial payment; (2) there is a market for MarketAmerica products that were purchased by the Plaintiffs and the Class; and (3) MarketAmerica would, partially, buy back and/or is likely to buy back a portion of the product initially sold to the Plaintiffs and the Class.

270. Defendants also represented or implied that they have sold the MarketAmerica seller assisted marketing plan to at least five other individuals in the previous 24 months, and intend to sell the MarketAmerica seller assisted marketing plan to at least five individuals in the next 12 months.

271.    Defendants are sellers of "Seller Assisted Marketing Plans," as defined in Cal. Civ. Code § 1812.201(d).

272.    The Defendants did not provide the Plaintiffs or the Class a "Disclosure Document or an Information Sheet" as required by Cal. Civ. Code §§ 1812.205 and 1812.206. Furthermore, the MarketAmerica business opportunity contracts did not meet the substantive requirements of Cal. Civ. Code § 1812.209. Nor was the MarketAmerica seller assisted marketing plan registered as required by Cal. Civ. Code § 1812.203.

273.    As more fully alleged above, Defendants, individually and through their agents, made earnings and market representations to the Plaintiffs and the Class without the substantiating data or disclosures required by Cal. Civ. Code § 1812.204. The representations were fraudulent in violation of Cal. Civ. Code §§ 1812.201 and 1812.204.

274.    Defendants' sale of an unregistered "Seller Assisted Marketing Plan" from the state of California entitles the Plaintiffs and the Class to their actual damages, attorneys' fees, rescission of the agreements at issue, and punitive damages pursuant to Cal. Civ. Code §§ 1812.215 and 1812.218.

275.    Defendants' disclosure violations entitle Plaintiffs and the Class to their actual damages, attorneys' fees, rescission of the agreements at issue, and punitive damages pursuant to Cal. Civ. Code §§ 1812.215 and 1812.218.

276.    Plaintiffs seek provisional relief that Market America be required to make necessary disclosures.

277.    Defendants' anti-fraud violations entitle the Plaintiffs and the Class to recover their damages pursuant to Cal. Civ. Code §§ 1812.215 and 1812.218.

## **PRAYER FOR RELIEF**

The named Plaintiffs and the Plaintiffs' class and subclasses request the following relief:

a.    Certification of the class and subclasses;

b.    A jury trial and judgment against Defendants;

c.    Rescission of the agreements, accounts stated, invoices, receipts, ticket stubs, bills, and any other writings upon which the scheme is based, and recovery of all consideration paid

1  pursuant to the scheme, less any amounts paid or consideration provided to the participant

2  pursuant to the scheme;

3      d.      Damages for the financial losses incurred by Plaintiff and by the class and

4  subclasses because of the MarketAmerica and the Individual Defendants' conduct and for injury to

5  their business and property;

6      e.      Restitution and disgorgement of monies;

7      f.      Temporary and permanent injunctive relief enjoining MarketAmerica from paying

8  its Distributors recruiting rewards that are unrelated to retail sales to ultimate users and from

9  further unfair, unlawful, fraudulent and/or deceptive acts;

10     g.      The cost of suit including reasonable attorneys' fees under California Code of Civil

11  Procedure § 1021.5, Civil Code §1689.2, and otherwise by law;

12     h.      For damages in an amount yet to be ascertained as allowed by law;

13     i.      Appointment of a receiver;

14     j.      Provisional injunctive relief concerning requirements under SAMP;

15     k.      Provisional determination as to the illegality of the so called "Terms";

16     l.      Provisional relief including appointment of a receiver;

17     m.      Provisional injunctive relief to prohibit Defendants from recruiting additional

18  participants;

19     n.      For such other damages, relief and pre- and post-judgment interest as the Court

20  may deem just and proper.

21

22  Dated:  March 8, 2019              By: _____

23                                     **LINDEMANN LAW FIRM, APC**
                                       BLAKE J. LINDEMANN, SBN 255747
24                                     433 N. Camden Drive, 4th Floor
                                       Beverly Hills, CA 90210
25                                     Telephone:  (310)-279-5269
                                       Facsimile:   (310)-300-0267
26                                     E-mail:      blake@lawbl.com

27                                     -and-

28

ORIGINAL COMPLAINT – CLASS ACTION                                    54

DAREN M. SCHLECTER, SBN 259537
**LAW OFFICES OF DAREN M. SCHLECTER, APC**
1925 Century Park East, Suite 830
Los Angeles, CA 90067
Telephone:   (310)-553-5747

Attorneys For Plaintiffs
Jinhua Zou, Yu Xia Lu, Chuanjie Yang, Ollie Lan, Liu Liu

1  <u>**DEMAND FOR JURY TRIAL**</u>

2      Plaintiffs Jinhua Zou, Yu Xia Lu, Chuanjie Yang, Ollie Lan, Liu Liu, on behalf of

3  themselves and those similarly situated, hereby request a jury trial on all matters so triable.

4

5  Dated: March 8, 2019        By: _____

6        **LINDEMANN LAW FIRM, APC**

7        BLAKE J. LINDEMANN, SBN 255747
      433 N. Camden Drive, 4th Floor

8        Beverly Hills, CA 90210
      Telephone: (310)-279-5269

9        Facsimile: (310)-300-0267
      E-mail: blake@lawbl.com

10        -and-

11        DAREN M. SCHLECTER, SBN 259537

12        **LAW OFFICES OF DAREN M. SCHLECTER, APC**
      1925 Century Park East, Suite 830

13        Los Angeles, CA 90067
      Telephone: (310)-553-5747

14

15        Attorneys For Plaintiffs
      CHUANJIE YANG, OLLIE LAN, LIU LIU, AND ALL

16        THOSE SIMILARLY SITUATED

17

18

19

20

21

22

23

24

25

26

27

28